247 P.2d 865

CAVAZOS v. GERONIMO BUS LINES, Inc..
No. 5506.

Supreme Court of New Mexico.
Sept. 4, 1952.

Gilbert, White & Gilbert, Santa Fe, for appellant.

Tibo J. Chavez, Belen, Joseph L. Smith, Lorenzo A. Chavez, Dale B. Walker, Albuquerque, for appellee.

COMPTON, Justice.

Appellee, plaintiff below, the surviving widow of Cruz Cavazos, deceased, the representative of his estate, and as guardian of their minor children, brought this action to recover damages for his alleged wrongful death from Geronimo Bus Lines, Inc., a corporation, Marvin J. Johnson, and Brown Brothers Construction Company, a corporation. The cause was thereafter dismissed as to the latter defendant.

Appellant is a common carrier for hire, operating motor busses between Albuquerque, New Mexico, and El Paso, Texas, over

highway 85. Intermediate points are Los Lunas and Lemitar, the latter a village of approximately 250 inhabitants, where appellant maintains a bus stop, or depot, on the east side of the highway. The village of Lemitar parallels the highway a distance of some two miles but, due to a change in the highway, lies to the east about one half mile. On the evening of July 21, 1950, about 9:00 p. m., Cavazos acquired transportation upon appellant's bus from Los Lunas to Lemitar to visit his mother whom he had visited in Lemitar on numerous occasions. He arrived at his destination at 10:30 p. m. About one half mile before reaching Lemitar, however, he went to the front of the bus and stood by the driver until it came to a stop. He informed the driver that he wanted to get off before arriving at Lemitar. The driver asked him to designate the place and he would comply with his request. It was dark and the bus station was not lighted. Cavazos was observed looking to the east, presumably to locate the village of Lemitar or the bus station, which is located about 100 feet east of the highway. As the bus proceeded south and as it was approaching a point west of the station, Cavazos requested the driver to let him off. The driver stopped the bus on the west side of the highway opposite its station, the left wheels remaining on the pavement some four feet. Cavazos was let out the front door, on the right side of the highway, off the pave-

ment. Before stopping, the driver observed an automobile approaching from the south which he estimated to be about two miles away but he did not direct Cavazos' attention to it. As Cavazos alighted, he again noticed the approaching vehicle and that it was advancing at a rapid rate, about three quarters of a mile away. Thereupon the driver continued his trip to El Paso, not learning of the fatal injury for some two days thereafter. After alighting, Cavazos walked toward the rear of the bus and then proceeded in an easterly direction towards Lemitar. Necessarily, he had to cross the highway and as he did so the vehicle approaching from the south and driven by appellant Johnson struck him, causing the fatal injury.

The concurring negligence of Johnson and appellant's driver is alleged as a proximate cause of the injuries complained of. Negligence is predicated upon breach of duty in discharging the decedent from the bus on the west side of the highway and in failing to warn him of the approaching automobile. Issue was raised by a general denial. As a separate defense the contributory negligence of appellee's intestate is pleaded as a contributing and proximate cause of the alleged injuries.

The cause was tried to a jury and at the conclusion of the evidence, motion for a directed verdict was interposed, the denial of which, among other things, is assigned as

error. The jury returned its verdict against appellants, and from the judgment following the verdict, an appeal was taken. Subsequently, however, satisfaction of judgment was entered as to appellant Johnson, and Geronimo Bus Lines, Inc., alone is seeking a review.

As grounds for a reversal appellant urges a number of specifications but the decisive questions are (a) whether there is any substantial evidence tending to establish negligence on the part of appellant, Geronimo Bus Lines, Inc., and if so was such negligence a proximate cause of the injury, and (b) was appellee's intestate guilty of contributory negligence as a matter of law. In determining these questions we are guided by the rule that on motion for a directed verdict the evidence must be viewed in its most favorable aspect to support a plaintiff and where reasonable minds may differ as to inferences to be drawn or the conclusion to be reached from the evidence, it becomes a question of fact for the jury. Conversely, if the evidence is such that reasonable minds could not differ and a verdict for plaintiff could not be sustained then a directed verdict should be granted.

Thus, viewing the evidence, we see no breach of duty. So long as the relationship of carrier and passenger exists the carrier owes the passenger the highest degree of care for his safety and such re-

lation continues until he is safely discharged from the conveyance of the carrier in a place where he may safely remain. The passenger having been thus discharged, it is not incumbent upon the carrier to warn him against the ordinary traffic hazards such as he may experience after leaving a place of safety. Concerning the question the authorities are harmonious. Lewis v. Pacific Greyhound Lines, Inc., 147 Or. 588, 34 P.2d 616, 96 A.L.R. 718; Southwestern Motor Carriers, Inc., v. Nash, 195 Okl. 604, 159 P.2d 745; Beeson v. Tri-State Transit Co. of Louisiana, 5 Cir., 146 F.2d 754; Chatterton v. Pocatello Post, 70 Idaho 480, 223 P.2d 389, 20 A.L.R.2d 783; Hudak v. Penn-Ohio Coach Lines Co., 73 Ohio App. 409, 57 N.E.2d 93; Jacobson v. Omaha & Council Bluffs St. Ry. Co., 109 Neb. 356, 191 N.W. 327, 31 A.L.R. 563; Lindgren v. Puget Sound International Ry. & Power Co., 142 Wash. 546, 253 P. 791; Mississippi City Lines, Inc., v. Bullock, 194 Miss. 630, 13 So.2d 34, 145 A.L.R. 1199; Larson v. City of Seattle, 25 Wash.2d 291, 171 P.2d 212; Williams v. East Bay Motor Coach Lines, Limited, 16 Cal.App.2d 169, 60 P.2d 320. Also, see 65 C.J.S., Negligence, § 111 (d); 13 C.J.S., Carriers, § 724; 4 Blashfield Cyclopedia of Automobile Law and Practice, Sec. 2172.

The undisputed evidence disclosed that appellee's intestate sustained no injuries as a result of his leaving the bus at the place where it was stopped. He was not injured

until he had left a place of safety and walked more than half way across the pavement and into the stream of traffic over which appellant had no control. Clearly, his injuries resulted either from his own negligence, the negligence of appellant Johnson, or their concurring negligence. To say that he did not see the approaching vehicle while on the bus is purely speculative. He was under a duty to see that which was plainly visible. This principle controlled the decisions in Ortega v. Koury, 55 N.M. 142, 227 P.2d 941; Seal v. Safeway Stores, Inc., 48 N.M. 200, 147 P.2d 359. Also see 65 C.J.S., Negligence, § 120. The case is to be distinguished, however, from those cases fixing liability for negligence where a passenger upon being discharged from a bus is subjected to hidden dangers or where a passenger is oblivious to danger.

Lewis v. Pacific Greyhound Lines, Inc., supra, is strikingly similar to the case at bar. The bus driver discharged plaintiff at a safe place on the right-hand side of the highway. He walked around the bus and started in the direction of the bus station on the opposite side of the road. As he did so he was struck by a car approaching from the opposite direction. It was there contended that defendant breached its duty in failing to discharge plaintiff at its depot and in failing to warn him of approaching danger. A judgment favoring plaintiff was reversed in the following language [147 Or. 588, 34 P.2d 618]:

" * * * 'The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended.'

"In the instant case the evidence discloses without contradiction that the plaintiff was not injured while engaged in alighting from the bus. It also appears without conflict that he was discharged as a passenger on the right side of the bus. He went out the front door onto the gravel shoulder of the pavement. The left wheels of the bus were only a foot or two on the east side of the pavement. After having thus alighted in safety, did the relationship of carrier and passenger continue while he walked 35 feet to the rear of the bus and half way across the pavement, which was 16 feet wide? We think not. Unquestionably the plaintiff walked from a place of safety into a place of danger. Cases where passengers were injured while engaged in the act of alighting or where they have been

discharged onto the pavement thereby being subjected to the dangers of traffic are not in point. No case has been cited, based upon a similar state of fact, where liability has been sustained. To hold otherwise would make the carrier an insurer. * * *"

In Southwestern Motor Carriers, Inc. v. Nash, supra, the passenger tendered a cash fare to the driver which was refused. The driver directed him to return to the station and get the correct change or a ticket. While crossing the street in front of the bus he was struck and killed by a passing vehicle. The opinion says [195 Okl. 604, 159 P.2d 748]:

"In the case at bar the negligence of the carrier and its driver is said to consist primarily in discharging plaintiff's intestate from the bus in a place of danger and secondarily in failing to warn him of the hazards of crossing the street at the point where he left the bus. The evidence of plaintiff however discloses that the plaintiff's intestate sustained no injury as a result of leaving the bus at the point where it was stopped but that he left there in safety and did not suffer any injury until after he had passed in front of the bus and into the traffic stream when he was struck and mortally injured by a truck over which the defendant carrier had no control or supervision and which

constituted an ordinary traffic hazard of which plaintiff's intestate was as fully aware as was the driver of the bus. Where a passenger has been discharged in safety from the vehicle of a carrier the carrier has no duty to warn such passenger against ordinary traffic hazards which he may experience in going from the vehicle across the street as distinguished from going from the vehicle to the sidewalk at the nearest point from which the passenger left the vehicle. (Citing cases.)

"The evidence of plaintiff wholly fails to establish any actionable negligence on the part of the defendants Southwestern Motor Carriers, Inc., and its driver and therefore is insufficient on which to base any recovery in favor of the plaintiff and for this reason the demurrers of said defendants to the evidence of plaintiff and their motions for directed verdict at the close of all of the evidence should have been sustained."

In Mississippi City Lines, Inc. v. Bullock, supra [194 Miss. 630, 13 So.2d 38], the court reached the same conclusion in the following language:

"All these cases hold, and we concur therein, that, where the facts are such as we have here before us, (a) the injury is the remote and not the proximate consequence of the negligent or

unlawful position in which the bus was stopped; (b) the bus driver was under no duty to warn of the danger of approaching vehicles; and (c) when the passenger has alighted at a sound place off and away from the traveled portion of the highway and where the passenger could safely stand and remain, the relation of carrier and passenger is thereby at an end."

We conclude there was no actionable negligence shown and that the motion for a directed verdict should have been sustained. The judgment will be reversed with directions to the trial court to dismiss the action. And It Is So Ordered.

LUJAN, C. J., and SADLER, McGHEE and COORS, JJ., concur.